UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DIGITAL CONTENT PROTECTION, LLC,                    :
a Delaware limited liability company,
                                                    :        CIVIL ACTION NO.
            and
                                                    :
                                                    :        **COMPLAINT FOR DAMAGES AND**
WARNER BROS. ENTERTAINMENT INC.,                              **INJUNCTIVE RELIEF BASED ON**
a Delaware corporation,                             :        **VIOLATIONS OF THE DIGITAL**
                                                             **MILLENNIUM COPYRIGHT ACT AND**
            Plaintiffs,                                       **THE LANHAM ACT**

        -against-                                            **JURY TRIAL DEMANDED**

LEGENDSKY TECH COMPANY LTD.,

            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        Plaintiffs Digital Content Protection, LLC ("DCP") and Warner Bros. Entertainment Inc.

("Warner Bros.") hereby allege as follows:

## I.   NATURE OF THE ACTION

        1.      This action seeks damages, injunctive and equitable relief, and other relief for

defendant's violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq*.

("DMCA"), and the Lanham Act, 15 U.S.C. § 1125(a)(1).

        2.      High-Bandwidth Digital Content Protection ("HDCP") is a technological measure

that effectively controls access to copyrighted works and protects the rights of copyright owners.

HDCP encrypts content as it travels from a wide variety of digital devices, including set-top

boxes, Digital Versatile Discs ("DVDs") and Blu-ray players, computers, Digital Video

Recorders ("DVRs") and game consoles, to digital display devices, such as high-definition

televisions ("HDTVs") (collectively, "Digital Devices").  HDCP is an indispensable content-

protection technology in today's increasingly digital audiovisual content ecosystem.

3.      Whether digital audiovisual content is delivered over the Internet, via physical optical discs, by digital broadcast signals, or from digital storage media such as computer hard drives, HDCP encryption technology ensures that this content is protected when it is transmitted from one device to another for ultimate display and enjoyment.  As such, HDCP plays a critical role in linking consumer electronics devices, personal computers, cable and satellite set-top boxes, and other Digital Devices to allow consumers to access and enjoy digital audiovisual content across a wide array of products, all while effectively protecting the rights of copyright owners and controlling access to copyrighted digital content.

4.      HDCP has broad industry support from the major players in the digital content value chain, including major motion picture studios, semiconductor companies, consumer electronics manufacturers and computer companies.  Many copyright owners, including plaintiff Warner Bros., require that Digital Devices be protected with HDCP in order to display their copyrighted content, including premium commercial entertainment content that is displayed on Digital Devices such as high-value digital motion pictures, television programs, and video games ("Digital Content").

5.      DCP introduced the first version of HDCP—HDCP 1.0—in 2000.  Since then, DCP has regularly released new versions of HDCP to keep pace with technological developments in the digital audiovisual content industry, including, for example, new interfaces, new display technologies, and the availability of higher resolution Digital Content.

6.      The newest version of HDCP is HDCP 2.2.  HDCP 2.2 provides enhanced security features, including state-of-the-art encryption technology.  HDCP 2.2 also provides additional functionality.  Most importantly, unlike previous versions of HDCP, HDCP 2.2 is capable of encrypting and transmitting ultra-high-definition ("UHD") Digital Content.

7.     UHD is a digital video format that provides resolutions up to four times greater than the high-definition ("HD") format, which is currently the industry standard.  The increase in image resolution from HD to UHD is "a similar jump . . . as the one from [standard resolution] to HD."  Nick Pino, *4K TV and Ultra HD: Everything you need to know*, TechRadar, http://www.techradar.com/us/news/television/ultra-hd-everything-you-need-to-know-about-4k-tv-1048954 (Exhibit A).

8.     Plaintiff  DCP is the owner of all rights in HDCP, including HDCP 2.2.  DCP licenses HDCP to over 550 Digital Device makers, purchasers, and resellers of HDCP-compliant devices, and Digital Content owners worldwide, including Warner Bros., and DCP receives administrative and licensing fees under such license agreements.

9.     Plaintiff Warner Bros. owns or controls copyrights in many of the most successful and critically acclaimed movies and recorded television programs released in the United States and worldwide.  Warner Bros. has invested billions of dollars to create and distribute Digital Content to consumers, has licensed it for display on Digital Devices, and has a license to use HDCP to control access to and to protect its rights in copyrighted Digital Content.

10.    Defendant LegendSky Tech Company Ltd. ("LegendSky") makes, imports, offers to the public, provides and otherwise traffics in devices marketed under the "HDFury" brand name that are designed to circumvent HDCP and to eliminate HDCP's access controls and protections.  The specific devices at issue in this action are identified in paragraph 57 and referred to collectively in this Complaint as the "HDFury Devices."

11.    The HDFury Devices are intended to circumvent HDCP encryption and do circumvent HDCP encryption.  For example, one of the HDFury Devices, the HDFury Integral 4K60 4:4:4 600MHz ("HDFury Integral"), allows users to "Display HDCP 2.2 Content with

Non-Compliant Devices" and to access digital content protected by HDCP 2.2 that is not

"encrypt[ed] . . . at all."  Integral 4K60 4:4:4 600MHz, Key Features,

http://www.hdfury.com/shop/splitters/integral-4k60-444-600mhz/ (Exhibit B).

12.     LegendSky's website states: "Integral allows you to view HDCP 2.2 content from

your Sony 4K media player, your Shield game console, your graphics cards, your Blu-ray player,

satellite/cable or via Netflix or internet sources on all standard 50/60Hz or 100/120Hz HDMI or

DVI-D displays without HDCP2.2 compliant input!"  Integral 4K60 4:4:4 600MHz, Getting

started, http://www.hdfury.com/shop/splitters/integral-4k60-444-600mhz/ (Exhibit C).

13.     LegendSky's website also states: "To the letter of the law (the DMCA that is), a

black box that removes the HDCP encryption to allow you to use a monitor that does not support

HDCP is illegal." HDCP, DMCA and us, http://www.hdfury.com/hdmihdcp/ (Exhibit D).

14.     The HDFury Devices harm copyright owners like Warner Bros. because they

enable Digital Content to be displayed without the protections of HDCP, thereby enabling users

to access copyrighted works, make and/or distribute copies of copyrighted works, create

derivative works of copyrighted works, or publicly perform copyrighted works, all without the

permission of the copyright owner.

15.     The HDFury Devices harm DCP because, among other things, they undermine the

effectiveness of HDCP, lower the value of HDCP, and thereby jeopardize DCP's ability to

license HDCP to Digital Device manufacturers and Digital Content owners.

16.     The HDFury Devices give rise to additional and unique harms to the extent that

they circumvent HDCP 2.2, the newest version of HDCP.

17.     HDCP 2.2 is the only widely adopted, industry-approved technological measure

for protecting UHD content transmitted to display devices.  If HDCP 2.2 is compromised, then it

will become vastly easier to access, copy, reproduce, and perform UHD content without the authority of the copyright owner.  As a result, Digital Content owners will be discouraged from creating and distributing UHD content, Digital Device makers will be discouraged from manufacturing and selling devices that display UHD content, and consumers will be deprived of the benefits of UHD.

18.     Moreover, copyright owners like Warner Bros. will be deprived of the benefits of providing UHD content, including the profits from providing such content, and DCP will be deprived of the benefits of licensing HDCP 2.2 to Digital Device makers and Digital Content owners who would otherwise adopt the UHD format.

19.     Despite demands that LegendSky cease and desist offering, manufacturing, importing, providing or otherwise trafficking in the HDFury Devices, LegendSky has persisted in its unlawful activities, and, unless enjoined, will continue its unlawful actions and cause further damage and irreparable injury to plaintiffs.  Plaintiffs bring this action to stop that harm and protect their rights.

## II.    THE PARTIES

20.     Plaintiff DCP is a limited liability company, organized and existing under the laws of Delaware, and having its principal place of business at 3855 SW 153rd Drive, Beaverton, Oregon 97003, United States.

21.     Plaintiff Warner Bros. is a corporation, organized and existing under the laws of Delaware, and having its principal place of business at 4000 Warner Boulevard, Burbank, California 91522, United States.

22.     On information and belief, defendant LegendSky is a business or an individual located in China.

23.     LegendSky is responsible for making, importing, offering to the public, providing, advertising, promoting and/or otherwise trafficking in HDFury Devices in this District as well as throughout the United States.

### III.     JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1332 and under 17 U.S.C. §§ 1201 and 1203.

25.     LegendSky is doing business in the State of New York and in this District and is subject to the jurisdiction of this Court.

26.     This Court has personal jurisdiction over LegendSky because LegendSky regularly and purposely conducts, solicits, and transacts business in New York and this District and has marketed toward, sold, distributed, provided, and otherwise trafficked products into New York and this District.  LegendSky conducts, solicits, and transacts business in New York and this District, and enters into contracts in New York and this District, via its fully interactive commercial websites, fully interactive websites operated by others, and resellers operating in New York.  On information and belief, LegendSky has accepted and fulfilled sales orders from consumers in New York and this District, and has sold or provided HDFury Devices to consumers in New York and this District, harming plaintiffs in New York and this District.

27.     Alternatively, this Court has personal jurisdiction over LegendSky under Federal Rule of Civil Procedure 4(k)(2).

28.     Venue is proper in this District under 28 U.S.C. § 1391.  Alternatively or in addition, venue in this District is proper under 28 U.S.C. § 1400.

## IV.   FACTS

### A.   The HDCP Specification

29.    The widespread availability of Digital Content has made Digital Content providers increasingly concerned about unauthorized copying, distribution, and use of their copyrighted works.  As a result, Digital Content owners, media manufacturers, and electronics manufacturers have implemented a variety of technologies that protect access to high-value Digital Content distributed via different media.

30.    HDCP is an essential link in this chain of protection.  HDCP encryption protects the last stage in the process of distributing Digital Content to consumers: transmission over digital interfaces from Digital Devices that receive such content to Digital Devices that display such content.  Figure 1 shows how HDCP fits into the overall content-protection picture.

**FIGURE 1**

31.     HDCP is interface-independent and is available and can be licensed under the appropriate agreement(s).  HDCP can be used with Digital Devices that connect to each other through a variety of interfaces including wireless interfaces, High-Definition Multimedia Interface ("HDMI"), an interface widely adopted by HDTV manufacturers and other consumer electronics device manufacturers, Display Port, a video interface that provides high-quality visual and digital displays on devices like flat panel LCD computer displays and digital projectors, and Universal Serial Bus ("USB"), an industry standard that defines the cables, connectors and communications protocols used in a bus for connection, communication, and power supply between computers and electronic devices.  Further information about the HDCP specifications and interfaces can be found at www.digital-cp.com/hdcp_specifications.

32.     HDCP effectively controls access to copyrighted Digital Content and protects copyright holders' rights in Digital Content, as set forth in the DMCA, by using authentication and encryption techniques to prevent the transmission of unencrypted Digital Content, including the transmission of unencrypted Digital Content to devices that lack HDCP protection.

**B.     HDCP-Protected Systems**

33.     Digital Devices linked together to enable the display of Digital Content can be categorized as "sources," "repeaters," or "sinks."  HDCP protects data as it is transmitted between these types of devices when they are connected via HDCP-protected digital interfaces.

34.     Devices that transmit Digital Content to be displayed (e.g., set-top boxes, computer video cards, and DVD and Blu-ray players) are "sources."  HDCP-protected sources have an HDCP transmitter.  Devices that receive Digital Content, decrypt it, then re-encrypt and re-transmit it (e.g., home theater audiovisual receivers) are "repeaters."  Devices that receive Digital Content and then render it for display (e.g., HDTVs and digital projectors) are "sinks."  HDCP-protected sinks have at least one HDCP receiver.

35.     HDCP-licensed sources, repeaters, and sinks can be connected in a tree-shaped topology.  All communication among the devices in the tree is protected by HDCP.  A typical system for a home theater might include several sources connected to a repeater, which is in turn connected to a sink.  Figure 2 illustrates such a system, in which three sources (a Blu-ray player, set-top box, and game console) are connected to a repeater (audiovisual receiver) which is connected to a sink (TV).  All communication among the devices in the tree is protected by HDCP (indicated by dotted line lines).

**FIGURE 2**



**C.**     **The HDCP Authentication, Encryption, and Decryption Process**

36.     HDCP employs an authentication, encryption, and decryption process to ensure

that only HDCP-protected Digital Devices can receive and display protected Digital Content.

The process operates as follows:

     a.  Before HDCP-protected content is sent, an HDCP-protected transmitting device

        (a "transmitter") will initiate a "handshake" authentication process to confirm that

        the receiving device (the "receiver") is HDCP-compliant and therefore authorized

        to receive the Digital Content.  This process involves several steps whereby the

        transmitter prompts the receiver to demonstrate that the receiver holds valid,

        secret device keys held only by HDCP-compliant devices, and the receiver

        demonstrates it is authorized to receive the content by sending its DCP-issued key

        selection vector, thereby protecting the HDCP private keys, yet allowing

        authentication to complete.  During this process, the device private key is not

        publicly revealed.

     b.  Once the receiver is authenticated, the transmitter encrypts the content, then sends

        the encrypted content to the receiver.

     c.  The encrypted content must be decrypted to be displayed.  The encrypted content

        can be decrypted only by using an HDCP cipher engine and a session key, both of

        which will be present only in HDCP-compliant devices.  This process thereby

        ensures that only an HDCP-compliant device can decrypt HDCP-protected

        content.

**D.**     **DCP and Its Licensing of the HDCP Specification**

37.     DCP licenses HDCP to over 550 leading Digital Device manufacturers and

Digital Content owners worldwide, including plaintiff Warner Bros. and other major motion

picture studios.  DCP licenses HDCP to Digital Device manufacturers pursuant to the HDCP

License Agreement ("Adopter Agreement").  Licensees under the Adopter Agreement ensure

Digital Devices they manufacture comply with the HDCP specification and the terms of the

Adopter Agreement, and are interoperable with other products over HDCP-protected interfaces.

38.     DCP also makes licenses available to owners of Digital Content pursuant to the

HDCP Content Participant Agreement ("Content Participant Agreement"), although owners of

Digital Content do not need a license to require HDCP protection for their valuable content.

A number of Digital Content owners that are licensees pursuant to the Content Participant

Agreement receive certain change management and third-party beneficiary rights.

39.     DCP receives annual administrative fees and licensing fees from Digital Device

manufacturers under the Adopter Agreement and annual administrative fees from Digital

Content owners under the Content Participant Agreement.  Further information about HDCP

licenses can be found at www.digital-cp.com/licensing.

**E.     <u>Warner Bros. and Its Digital Content</u>**

40.     Warner Bros. is a world-famous entertainment company and a global leader in the

creation, production, distribution, licensing, and marketing of Digital Content.  Warner Bros.

owns or controls copyrights in an extensive library of works that includes approximately 6,650

feature films and 50,000 television titles, as well as over 14,000 animated titles and 1,500 classic

animated shorts.  Warner Bros.' Digital Content includes, for example, the hugely popular

*Harry Potter* and *Lord of the Rings* movie series, cartoon megabrands like Looney Tunes and

Scooby-Doo, and movie classics like *The Wizard of Oz*.

41.     Warner Bros. has invested billions of dollars and substantial effort to develop,

produce, and distribute its Digital Content for viewing on Digital Devices, including Digital

Content in the UHD format.  Warner Bros. provides its Digital Content to consumers through

tangible media such as DVDs and Blu-ray discs, as well as through digital transmission media such as pay-per-view, electronic sell-through, transactional video-on-demand, and subscription video-on-demand.

42.     The expressive and other distinctive features of Warner Bros.' Digital Content are wholly original to Warner Bros., its licensors or assignors, and, as fixed in various tangible media, are copyrightable subject matter under the Copyright Act.

43.     Warner Bros. holds certificates of copyright registration and/or has secured exclusive licenses or assignments to reproduce, distribute, and license its Digital Content throughout the United States.  Warner Bros.' exclusive rights in its Digital Content include the rights to reproduce, distribute, or license the reproduction and distribution of its Digital Content in video format in the United States.

44.     Warner Bros. and those acting under its authority have complied with their obligations under copyright law.  Warner Bros., in its own right or as a successor-in-interest, has at all relevant times been and still is the sole owner or otherwise authorized to enforce all right, title, and interest in and to the copyright in, or to enforce its exclusive right to home video distribution of, its Digital Content.

45.     Warner Bros. actively seeks to offer its Digital Content in the most cutting-edge manner available while vigorously protecting its intellectual property rights.  Its efforts to do so include entering into a Content Participant Agreement with DCP that grants Warner Bros. a non-exclusive and non-transferable license to use HDCP, and to cause or permit HDCP to be used, to protect Warner Bros.' Digital Content during distribution and transmission.  HDCP's implementation thus helps protect Warner Bros.' Digital Content from unauthorized access, copying, and distribution.

46.     Warner Bros. requires the use of HDCP in many of its distribution licenses for pay-per-view, video-on-demand, and other premium Digital Content delivery services to which Warner Bros. licenses its film and television programming.

**F.      LegendSky's Unlawful Activities**

47.     LegendSky makes, imports, offers to the public, provides, and otherwise traffics in the HDFury Devices.

48.     In common parlance, the HDFury Devices are "strippers."  Inserted between an HDCP-compliant source device and a non-HDCP-compliant sink device, an HDFury Device will remove (or "strip") HDCP encryption from copyrighted Digital Content as it is transmitted from the source device to the sink device.  As a result, the copyrighted Digital Content is rendered "in the clear," making it vulnerable to unauthorized access, copying, and redistribution, and enabling HDFury Device users to access, copy, and distribute copyrighted Digital Content without the authority of the copyright owner.  Images of selected HDFury Devices are shown below.

**HDFury Integral**              **HDFury IV S**              **HDFury III**

 

49.     The HDFury Devices are primarily designed or produced for the purpose of circumventing HDCP; have only limited commercially significant purpose or use other than to circumvent HDCP; or are marketed by LegendSky or others acting in concert with LegendSky with LegendSky's knowledge for use in circumventing HDCP.  The HDFury Devices

descramble a scrambled work, decrypt an encrypted work, or otherwise avoid, bypass,

circumvent, remove, deactivate, or impair HDCP, without the authority of plaintiffs.

50.     LegendSky knew or should have known the purpose and use of the HDFury

Devices it offered to the public, provided, or otherwise trafficked in.  LegendSky knew or should

have known that offering to the public, providing, or otherwise trafficking in the HDFury

Devices was unlawful.  LegendSky's actions were willful and were taken for LegendSky's own

commercial advantage or financial gain.

51.     Indeed, LegendSky's website states: "To the letter of the law (the DMCA that is),

a black box that removes the HDCP encryption to allow you to use a monitor that does not

support HDCP is illegal." HDCP, DMCA and us, http://www.hdfury.com/hdmihdcp/ (Exhibit

D).

52.     LegendSky makes, imports, offers to the public, provides, and otherwise traffics

in the HDFury Devices through LegendSky's fully interactive commercial website,

www.hdfury.com, and through additional retail and distribution channels, including other fully

interactive commercial websites maintained by third parties, and resellers operating in New

York.

53.     LegendSky's actions with respect to the HDFury Devices render Digital Content

vulnerable to unauthorized access, copying, and distribution, harm Warner Bros. by rendering its

Digital Content vulnerable to unauthorized access, copying, and distribution, and impair the

effectiveness of HDCP, jeopardizing DCP's licensing revenues.

54.     LegendSky does not have a license from DCP or Digital Content owners to sell or

distribute the HDFury Devices, and LegendSky is not a licensee under a Content Participant

Agreement.  In addition, the HDFury Devices do not comply with the Adopter Agreement, at

least because the HDFury Devices allow HDCP-protected content to be displayed on non-HDCP-compliant devices.

55.     LegendSky is well aware of plaintiffs' rights, the extent of the harm to plaintiffs' rights caused by the HDFury Devices, and plaintiffs' efforts to enforce their rights.  In fact, LegendSky's website, www.hdfury.com, addresses plaintiffs' enforcement efforts with respect to the HDFury Devices.  *See* HDCP, DMCA, and us, http://www.hdfury.com/hdmihdcp/ (Exhibit D).  Nevertheless, LegendSky continues to offer and promote for sale the HDFury Devices.

56.     On information and belief, LegendSky has derived significant profit and financial benefit from its involvement in the manufacture, importation of, offering to the public, providing, and/or otherwise trafficking in the HDFury Devices.

57.     Table 1, below, identifies the HDFury Devices and the version(s) of HDCP that each device circumvents, according to LegendSky's website, www.hdfury.com.

### TABLE 1

| Device Name | Device SKU | HDCP Version(s) |
|---|---|---|
| Integral 4K60 4:4:4 600MHz ("HDFury Integral") | INTEGRAL | Version 2.2 Version 1.4 |
| PCI-Matrix 44UHD | PCI-MX44UHD | Version 1.4 |
| Splitter 4K UHD/PRO | SPLITPRO | Version 1.3 |
| Splitter 4K UHD | SPLIT | Version 1.3 |
| 3DFury Basic Kit | HDF4BK | Version 1.1 |
| HDFury IV S Basic Kit | HDF4sBK | Version 1.1 |
| HDFury III Basic Kit | HDF3BK | Version 1.1 |
| HDFury II Basic Kit | HDF2BK | Unspecified |
| HDFury I Advanced Kit | HDF1AK | Unspecified |
| HDFury I Basic Kit | HDF1BK | Unspecified |
| HDFury Gamer 2 Component | HDFG2COMP | Unspecified |
| HDFury Gamer 2 RGBHV | HDFG2RGB | Unspecified |
| Dr. HDMI | DRHDMI | Unspecified |
| HDF1 Nano GX | NANOGX | Unspecified |

58.     Plaintiffs have tested HDFury Devices, including the following devices, to confirm that they circumvent the protection offered by HDCP:

    a.  HDFury Integral

    b.  3D Fury Basic Kit

    c.  HDFury III Basic Kit

59.     With respect to each HDFury Device identified in paragraph 58, testing confirms that each device transmits HDCP-protected content to non-HDCP-compliant devices by performing HDCP decryption, without the authorization of plaintiffs, and by avoiding, bypassing, removing, deactivating, and/or impairing the HDCP authentication process.  The HDFury Devices identified in paragraph 58 do not re-encrypt HDCP-protected content after it is transmitted to a non-HDCP-compliant device, rendering the content "in the clear" and therefore vulnerable to unauthorized access, copying, and redistribution.

60.     On information and belief, and based on representations on LegendSky's website, www.hdfury.com, all of the HDFury Devices identified in Table 1, including but not limited to those HDFury Devices tested by plaintiffs, bypass, remove, deactivate, and/or impair the HDCP encryption technology as described in paragraph 59.

61.     Plaintiffs reserve the right to amend this Complaint to include additional HDFury Devices manufactured, imported, offered to the public, provided, and/or otherwise trafficked if plaintiffs' ongoing investigation identifies additional devices that circumvent HDCP.

62.     LegendSky has also engaged in other unlawful activities in addition to its violations of the DMCA.

63.     In particular, LegendSky has caused false statements of fact about the HDFury Devices to be published on LegendSky's website, www.hdfury.com.  Specifically, LegendSky

has falsely suggested that the company and its activities are associated with, approved by, or authorized by DCP.  *See, e.g.*, HDCP, DMCA and us, http://www.hdfury.com/hdmihdcp/ (claiming that LegendSky and its "parent company" both "applied for HDCP membership," which was "granted to [LegendSky] immediately after payment of the annual fee") (Exhibit D).

64.     LegendSky's advertising implies, falsely, that the HDFury Devices comply with the HDCP encryption technology and are otherwise consistent with the terms of an HDCP license.  *See, e.g.*, HDCP, DMCA and us, http://www.hdfury.com/hdmihdcp/ (claiming that LegendSky "only offer[s] HDCP compliant devices like others"); *id*. (claiming that a "test center confirmed that our design was HDCP compliant") (Exhibit D); HDCP strippers legality, http://www.hdfury.com/hdmihdcp/ (stating that "[w]e have designed HDfury to comply" with HDCP's license requirements) (Exhibit E).

65.     LegendSky's false statements of fact, used to promote the HDFury Devices and encourage sales of the same, have the tendency to deceive a substantial segment of its audience by fostering a belief that LegendSky and the HDFury Devices are associated with or otherwise authorized or approved by plaintiffs.

66.     In addition, LegendSky's false statements of fact, used to promote the HDFury Devices and encourage sales of the same, are likely to deceive consumers into believing that the HDFury Devices are lawful when in fact they are not lawful, thereby encouraging consumers who would otherwise choose not to buy unlawful products to buy the HDFury Devices.

67.     LegendSky has caused the false statements above, and others, to enter interstate and foreign commerce by, among other things, publishing those statements on LegendSky's website.

**G.**     **The Harm Caused by LegendSky**

68.     The HDFury Devices allow users to circumvent, unlawfully and without any

authorization, the HDCP encryption technology that effectively controls access to Digital

Content and protects the copyrights of owners of such content as set forth in the DMCA.  Once

the HDCP protection is circumvented, the copyrighted content is unprotected, allowing the

content to be copied, distributed, and uploaded to the Internet without authorization, enabling

and dramatically increasing the risk of massive copyright infringement.

69.     The HDFury Devices harm Warner Bros. because the HDFury devices make

Warner Bros.' Digital Content more vulnerable to unauthorized access, copying, distribution,

and other unlawful uses.  Warner Bros. is damaged by the unauthorized and uncompensated use

of Warner Bros.' Digital Content, which decreases the demand for such content through

authorized distribution channels, such as home video, video-on-demand, and premium broadcast

channels.  Accordingly, Warner Bros. is a person injured by LegendSky's violations of the

DMCA as alleged herein.

70.     In addition, the HDFury Devices harm DCP by impairing the effectiveness of

HDCP, reducing the value of HDCP to DCP's licensees, and jeopardizing DCP's licensing

revenue.  Accordingly, DCP is a person injured by LegendSky's violations of the DMCA as

alleged herein.

71.     As explained above, the HDFury Devices give rise to additional and unique harms

to the extent that they circumvent HDCP 2.2 because, if HDCP 2.2 is compromised, then

accessing, copying, reproducing, and performing UHD content without the authority of the

copyright owner will become vastly easier.  As a result, Digital Content owners will be

discouraged from creating and distributing UHD content, Digital Device makers will be

discouraged from manufacturing and selling devices that display UHD content, and consumers will be deprived of the benefits of UHD.

72.     In addition, copyright owners like Warner Bros. will be deprived of the benefits of providing UHD content, including the profits from providing such content, and DCP will be deprived of the benefits of licensing HDCP 2.2 to Digital Device makers and Digital Content owners who would otherwise adopt the UHD format.

73.     Plaintiffs are also harmed by LegendSky's false advertising, both because it falsely implies that LegendSky's activities and the HDFury Devices are associated with, approved by, or authorized by plaintiffs, and because LegendSky's false advertising is likely to deceive consumers into believing that the HDFury Devices are lawful, thereby encouraging consumers who would otherwise choose not to buy unlawful products to buy HDFury Devices.

## V.     CAUSES OF ACTION

### COUNT ONE

**Violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2) and § 1201(b)(1)**

74.     Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75.     Section 1201(a)(2) of the DMCA provides, in pertinent part:

> No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component or part thereof, that—
>
> > (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;
> >
> > (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or

(C) is marketed by that person or another acting in concert with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

76.     Section 1201(b)(1) of the DMCA provides, in pertinent part:

No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—

(A) is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof;

(B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; or

(C) is marketed by that person or another acting in concert with that person's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof.

77.     In the ordinary course of its operation, HDCP requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to a copyrighted work.  HDCP is therefore a technological measure that effectively controls access to works protected by the Copyright Act, including Warner Bros.' Digital Content, as set forth in the DMCA.

78.     In the ordinary course of its operation, HDCP prevents, restricts, or otherwise limits the ability to copy or otherwise use copyrighted works without the authority of the copyright owners.  HDCP is therefore a technological measure that effectively protects Digital Content and the rights of copyright owners therein by preventing end users from engaging in the unauthorized reproduction, adaptation, public performance, or distribution of Digital Content or portions thereof, as set forth in the DMCA.

79.     DCP enters into license agreements with Digital Device manufacturers and owners of copyrighted Digital Content, which pay DCP license fees for rights to employ or implement HDCP.  Warner Bros. is one such copyright owner, and has entered into a license agreement to use or cause HDCP to be used to protect Warner Bros.' valid copyrights, duly and properly registered with the United States Copyright Office, in Digital Content.

80.     The HDFury Devices are primarily designed or produced for the purpose of circumventing HDCP; have only limited commercially significant purpose or use other than to circumvent HDCP; or are marketed by LegendSky or others acting in concert with LegendSky with LegendSky's knowledge for use in circumventing HDCP.  The HDFury Devices descramble a scrambled work, decrypt an encrypted work, or otherwise avoid, bypass, circumvent, remove, deactivate, or impair HDCP, without the authority of plaintiffs.

81.     LegendSky has been and is actively engaged in the business of manufacturing, importing, offering to the public, providing, or otherwise trafficking in the HDFury Devices. LegendSky knew or had reason to know the purpose and use of the HDFury Devices. LegendSky knew or should have known that manufacturing, importing, offering to the public, providing, or otherwise trafficking in the HDFury Devices was unlawful.  LegendSky's actions were willful and were taken for LegendSky's own commercial advantage or financial gain.

82.     By its wrongful conduct, LegendSky has injured and, unless enjoined, will continue to injure plaintiffs, as set forth above.

83.     Plaintiffs are entitled to recover their actual damages and LegendSky's profits resulting from LegendSky's wrongful conduct under 17 U.S.C. § 1203(c)(2).  Alternatively, plaintiffs, at their election, are entitled to the maximum statutory damages permitted by the DMCA under 17 U.S.C. § 1203(c)(3).

84.     LegendSky's continued wrongful conduct, unless enjoined and restrained by the Court, will cause grave and irreparable harm to plaintiffs, who have no adequate remedy at law. Moreover, if unabated, LegendSky's misconduct will encourage others to develop circumvention devices that violate plaintiffs' rights and the DMCA.  Thus, plaintiffs are entitled to injunctive relief under 17 U.S.C. § 1203(b)(1) and to an Order impounding any materials involved in LegendSky's violation of the DMCA under 17 U.S.C. § 1203(b)(2).

85.     Plaintiffs also are entitled to recover their attorneys' fees and costs of suit under 17 U.S.C. § 1203(b)(4) and (b)(5).

## COUNT TWO

### Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)

86.     Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 85 of this Complaint as if fully set forth herein.

87.     The Lanham Act, 11 U.S.C. § 1125(a), provides a civil remedy for false advertising and states in pertinent part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

88.     LegendSky has caused false statements of fact about the HDFury Devices to be published on LegendSky's website, www.hdfury.com, including false statements to the effect that LegendSky and its activities are associated with, approved by, or authorized by plaintiffs, and false statements to the effect that the HDFury Devices comply with the HDCP technology or are otherwise compatible with a DCP license.

89.     LegendSky's false statements of fact, used to promote the HDFury Devices and encourage sales of the same, have the tendency to deceive a substantial segment of its audience.

90.     LegendSky has caused the false statements above to enter interstate and foreign commerce by, among other things, publishing those statements on LegendSky's website.

91.     Plaintiffs have been, or are likely to be, injured as the result of the false advertising described above.

92.     Plaintiffs are entitled to monetary damages in an amount to be proved at trial to the fullest extent allowed under 15 U.S.C. § 1117, including but not limited to LegendSky's profits earned by its unlawful conduct.

93.     The extensive and willful conduct by LegendSky constitutes extraordinary circumstances that warrant the recovery of plaintiffs' attorneys' fees and costs associated with bringing this action under 15 U.S.C. § 1117.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for the following relief:

1.     An award of compensatory damages, including plaintiffs' consequential and incidental damages, in an amount to be proved at trial.

2.     An award of LegendSky's profits, gains, or unjust enrichment in an amount to be proved at trial.

3.     An award of statutory damages as allowed by law.

4.      An award to plaintiffs of their attorneys' fees and costs.

5.      An award of prejudgment and postjudgment interest at the maximum rate allowed by law.

6.      An accounting of all LegendSky's profits, gains, and unjust enrichment, including without limitation LegendSky's receipts and disbursements, profit and loss statements, and other financial materials, statements and books, relating to LegendSky's manufacture, importation, distribution, marketing, sale or other trafficking in the HDFury Devices.

7.      An accounting of all HDFury Devices, and any other devices or products that circumvent HDCP, that were or are within LegendSky's possession, custody, or control.

8.      A declaration that LegendSky's unauthorized importing, offering for sale, providing, or otherwise trafficking in the HDFury Devices violates 17 U.S.C. § 1201(a)(2) and (b)(1), and that LegendSky committed such violation willfully and for the purpose of LegendSky's direct or indirect commercial advantage or private financial gain.

9.      A preliminary and permanent injunction pursuant to 17 U.S.C. §§ 1203 and 502 enjoining LegendSky, its agents, servants, and employees, and all those in active concert or participation with LegendSky, from:

a.   importing, manufacturing, offering to the public, providing, using, or otherwise trafficking in any technology, product, service, device, component or part thereof (including the HDFury Devices) that is primarily designed or produced to circumvent HDCP;

b.   importing, manufacturing, offering to the public, providing, using or otherwise trafficking in any technology, product, service, device, component or part thereof

(including the HDFury Devices) that has only limited commercially significant purpose or use other than to circumvent HDCP;

c.   importing, manufacturing, offering to the public, providing, using or otherwise trafficking in any technology, product, service, device, component or part thereof (including the HDFury Devices) that is marketed by LegendSky or others acting in concert with LegendSky for use in circumventing HDCP;

d.   importing, exporting, shipping, delivering, distributing, transferring, returning, holding for sale, destroying, or otherwise moving, storing, or disposing of any HDFury Devices or any other item or product bearing or used to reproduce an unauthorized copy of HDCP-protected Digital Content or any portion thereof;

e.   destroying, transferring, altering, moving, returning, concealing, or in any manner secreting any and all HDFury Devices, and any and all documents and records, including, without limitation, computer tapes, drives, or disks; business records; emails; supplier names and addresses; shipment records; books of accounts; receipts; specifications; packaging and containers; and other documentation relating or referring in any way to the importing, manufacturing, offering to the public, providing, or otherwise trafficking in HDFury Devices;

f.   manufacturing, marketing, selling, importing, supplying, or otherwise providing any product, device, or component thereof that contributes to or induces the unauthorized use or copying of HDCP-protected Digital Content; and

g.   advertising, promoting, or otherwise publishing any statements conveying or suggesting that LegendSky and its activities are associated with, approved by, or

authorized by DCP or its licensees, or that the HDFury Devices comply with the HDCP technology or DCP's license requirements.

10.    Preliminary and permanent injunctive relief, such as may later be requested before or at trial, requiring LegendSky and all persons or entities in active concert or participation with LegendSky, immediately:

    a.   to identify every supplier of every HDFury Device and component thereof; and

    b.   to take steps sufficient to ensure that all HDFury Devices in LegendSky's possession, custody, or control or that are in shipment are immediately seized, inspected, and delivered into plaintiffs' possession.

11.    An Order pursuant to 17 U.S.C. §§ 1203 and 503 providing for the seizure, impoundment, and ultimate destruction of all HDFury Devices within LegendSky's custody or control, and for the seizure and impoundment of all records documenting the manufacture, sale, or receipt of HDFury Devices.

12.    An Order requiring LegendSky to file with the Court and serve upon plaintiffs within ten (10) days after the issuance of any injunction a written report, under oath, setting forth in detail the manner and form in which LegendSky has complied with the injunction.

13.    Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all issues so triable.

Dated: New York, New York.
     December 31, 2015

Respectfully submitted,

Perkins Coie LLP
30 Rockefeller Plaza
New York, NY  10112
212.262.6900

By: _____

Dennis Hopkins (DH-3767)
Dhopkins@perkinscoie.com

Attorneys for Plaintiffs
Digital Content Protection, LLC and
Warner Bros. Entertainment Inc.